# Exhibit 1

db

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

UNITED ROAD SERVICES, MIDWEST, INC.,
UNITED ROAD LOGISTICS, L.L.C., INC.,
UNITED ROAD SERVICES, INC., and
AAAAUTOLOG CORPORATION UNITED ROAD LOGISTICS, LLC,

          Plaintiffs,

vs

PREMIER TOWING AND AUTO TRANSPORT, and
ROYAL DESTINY TRANSPORT,

          Defendants.

CASE NO.          -CB
HON.

16-001483-CB
FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/3/2016 2:16:22 PM
CATHY M. GARRETT

---

MARC D. SAURBIER (P39331)
SAURBIER LAW FIRM, P.C.
Attorneys for Plaintiff
400 Maple Park Blvd., Suite 402
St. Clair Shores, MI 48081
(586) 447-3733 / Fax: (586) 447-3755
saurbierm@saurbier.com

---

This case qualifies for the Business Court pursuant to MCL 600.8031(2).

There is no other pending or resolved civil action arising out
of the same transaction or occurrence alleged in the Complaint.

### PLAINTIFFS' COMPLAINT

Plaintiffs, UNITED ROAD SERVICES, MIDWEST, INC., UNITED ROAD LOGISTICS, L.L.C., Inc., UNITED ROAD SERVICES, INC., and AAAAUTOLOG CORPORATION (collectively "United Road"), through their attorneys, SAURBIER LAW FIRM, P.C. states in support of its Complaint as follows:

1

## PARTIES

1. Plaintiffs are corporations existing under and by virtue of the laws of the State of Michigan with their principal place of business at 10701 Middlebelt Road, Romulus, Michigan.

2. Defendant Premier Towing and Auto Transport ("Premier Towing") is a licensed motor carrier incorporated in Kentucky with its principal place of business in Lexington, Kentucky.

3. Defendant Royal Destiny Transport ("Royal Destiny") is a licensed motor carrier incorporated in Georgia with its principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper pursuant to contract consenting to the jurisdiction and venue of this state pursuant to Mich. Comp. Laws § 600.711 and because the parties were involved in the transaction of any business in this state pursuant to Mich. Comp. Laws § 600.715. Additionally, jurisdiction is conferred in the circuit court as the amount in controversy exceeds $25,000.

## BACKGROUND

5. On November 26, 2010, United Road and Premier Towing were parties to a Broker/Contractor Agreement ("Agreement") under which Premier Towing agreed to transport and deliver motor vehicles brokered to it by United Road. A copy of the Agreement is attached hereto and incorporated herein as Exhibit "A."

6. Section 3. of the Agreement states as follows:

> **3. Broker and Co-Broker Prohibition:** [Premier Towing] expressly warrants, covenants, promises, agrees and represents that it will not directly and/or indirectly "broker," "co-broker" and/or cause to be brokered and/or co-brokered any and/or all motor vehicle logistical services arranged for [Premier Towing] by [United Road] herein and [Premier Towing] expressly warrants,

2

covenants, promises, agrees and/or represents and expressly states that it does not have broker authority and does not have a Department of Transportation Broker Operating Authority Number issued in accordance with 49 C.F.R. § 371 and will not assign, pledge or otherwise transfer to any other corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship and/or individual any and/or all motor vehicle logistic services arranged for by [United Road] hereunder.

7. Section 8 of the Agreement states in pertinent part:

> **8. Liability for Total Losses of New Motor Vehicles:** In the event of losses and/or damages to a new motor vehicle while under the care, custody and/or control of [Premier Towing] pursuant to this Agreement... [Premier Towing] and/or its Insurance companies will pay in full to [United Road] the retail value of the lost and/or damaged new motor vehicles less any salvage value, if any. Full payment of the retail value less salvage value, if any, shall be paid in full within 60 days of the event... If [Premier Towing] and/or its insurance company fails and/or refuses to pay [United Road] the full retain value less salvage value, if any, within the time periods set forth hereinabove, [United Road] shall be entitled in its sole and absolute discretion to deduct the full retain value less salvage, if any, and assess and deduct a 15% surcharge from any motor vehicle logistical payments that may be due and owing to [Premier Towing]. In the event that the deduction... does not equate to the retail value... [United Road] shall be entitled to cancel this Agreement and pursue those remedies available to it by law and [Premier Towing] expressly warrants, covenants, promises, agrees and represents that it understands that the remedies available at law to [United Road] shall also include lawful interest, counsel fees and costs of suit.

8. Section 9 of the Agreement requires Premier Towing to procure insurance for the benefit of United Road as the Broker.

9. Section 11 of the Agreement requires Premier Towing to fully indemnify and hold United Road harmless for any loss as follows:

> **11. Indemnification:** [Premier Towing] expressly warrants, covenants, promises, agrees and represents that it will indemnify, save, hold harmless and defend [United Road] without disclaimer and/or reservation from and for any and all payments, expenses, costs, attorneys' fees and from any and all claims and

3

liability for losses and/or damages to property and/or injuries to employees and/or representatives or for any part by or resulting from any acts and/or omissions by [Premier Towing] and/or [Premier Towing's] agents, servants, employees and/or representatives or for any cause or reason whatsoever arising out of, occasioned by or resulting from any motor vehicle logistical services provided and/or to be provided by [Premier Towing] pursuant to this Agreement.

10. At all times relevant, United Road has complied with all of its duties and obligations under the Agreement.

11. United Road tendered a load of seven (7) BMWs to Premier Towing for carriage under order number 23906118 ("Load").

12. Without advising United Road or securing its consent, Premier Towing subsequently tendered the Load to another company, Royal Destiny.

13. While the Load was being hauled on October 30, 2014, the Royal Destiny truck caught fire on I-64 westbound at mile marker 74 in Mt. Vernon, Illinois, damaging the Load.

14. The damage to the Load amounts to $461,300.00, which includes the total unit damage minus salvage amounts, as well as towing and storage costs.

15. United Road has demanded full payment for the Load from Premier Towing and Royal Destiny and their insurers.

16. Neither Premier Towing nor Royal Destiny, nor their insurers, have agreed to make full payment on the claim for the vehicle loss in the Load.

## COUNT I

## CARMACK AMENDMENT

### PREMIER TOWING and ROYAL DESTINY

17. United Road realleges and restates the allegations in paragraphs 1 through 16 above as if fully set forth herein.

18. At the time Premier Towing and/or Royal Destiny received the Load into its care, custody and control for transportation, the Load was in good order and condition.

19. At all times relevant hereto, Premier Towing and/or Royal Destiny owed United Road a duty to safely transport and deliver the Load in the same good order and condition as when received by them.

20. Premier Towing and/or Royal Destiny breached their duties as a motor carrier because the Load was delivered in damaged condition.

21. As a proximate result, United Road has incurred damages in the amount of $461,300.00, none of which has been paid by or on behalf of Premier Towing and/or Royal Destiny.

22. Pursuant to the Carmack Amendment (29 U.S.C. § 14706), Premier Towing and/or Royal Destiny are obligated to pay for the damage to the Load.

WHEREFORE, United Road prays for judgment in its favor and against Premier Towing and Royal Destiny as follows:

A. The value of the Load in the amount of $461,300.00;

B. Pre-judgment interest on that amount;

C. Attorney's fees and costs associated with pursuing the value of the Load and this suit; and

D. For any other such relief this Court deems appropriate.

## COUNT II

## INDEMNIFICATION

## PREMIER TOWING

23. United Road realleges and restates the allegations in paragraphs 1 through 22 above as if fully set forth herein.

24. Under the Agreement, Premier Towing expressly agreed to indemnify, save, and hold United Road harmless, without disclaimer, from and for any and all payments, expenses, costs, attorney's fees and from any and all claims for damage to property arising out of Premier Towing's motor vehicle logistical services provided or to be provided under the Agreement.

25. The Load was tendered to Premier Towing pursuant to the Agreement.

26. The damage to the Load arose out of Premier Towing's logistical services provided or to be provided under the Agreement.

27. Premier Towing is obligated under the agreement to fully indemnify United Road for the Load, including all attorney's fees, expenses, and costs.

WHEREFORE, United Road prays that this Court find and declare that Premier Towing has an obligation to fully indemnify and hold harmless United Road for the damage to the Load as follows:

A. The value of the Load in the amount of $461,300.00;

B. Pre-judgment interest on that amount;

C. Attorney's fees and costs associated with pursuing the value of the Load and this suit; and

D. For any other such relief this Court deems appropriate.

## COUNT III

### BREACH OF CONTRACT

### PREMIER TOWING

28. United Road realleges and restates the allegations in paragraphs 1 through 27 above as if fully set forth herein.

29. The Agreement prohibited Premier Towing from re-brokering any load brokered to it by United Road.

30. Premier Towing re-brokered the Load tendered to it by United Road pursuant to the Agreement to Royal Destiny.

31. The Agreement also required Premier Towing to procure insurance coverage for loss of property that would benefit United Road as an additional insured for the type of damage incurred with respect to the Load.

32. Premier Towing did not secure insurance coverage as provided in the agreement as Premier Towing's insurer, and Royal Destiny's insurer, have refused and/or failed to pay United Road's claim.

33. As a result of Premier Towing's breach of the Agreement, United Road has been damaged in the amount of $461,300.00 plus interest, attorney's fees and costs.

WHEREFORE, United Road prays that this Court find and declare that Premier Towing breached the Agreement and find it liable for all damages resulting from that breach, including:

A. The value of the Load in the amount of $461,300.00;

B. Pre-judgment interest on that amount;

C. Attorney's fees and costs associated with pursuing the value of the Load and this suit; and

D. For any other such relief this Court deems appropriate.

Respectfully Submitted,

SAURBIER LAW FIRM, P.C.

/s/ Marc D. Saurbier
MARC D. SAURBIER (P39331)
Attorneys for Plaintiffs United Road
400 Maple Park Boulevard, Suite 402
St. Clair Shores, MI 48081
(586) 447-3733
saurbierm@saurbier.com

Dated: February 3, 2016

# EXHIBIT A

## BROKER/CONTRACTOR AGREEMENT

THIS AGREEMENT is made and entered into this 26 day of November, 201_ by and between United Road Services Midwest, Inc., or its subsidiaries, including but not limited to United Road Logistics, L.L.C., Inc. and United Road Services, Inc., AAAutolog Corporation (hereinafter referred to as "BROKER"), located at 10701 Middlebelt Road, Romulus, Michigan 48174 and Premier Towing and Auto Transport (hereinafter referred to as "CARRIER"), located at 824 Irvine Allen Rd. Lexington, KY 40504.

**WHEREAS** BROKER is organized and existing under the laws of the State of Michigan and is engaged in the business of vehicle logistics from new vehicle manufacturers, assembly plants, ports, rail distribution centers, auctions, marshalling yards, terminal distribution centers, common dealerships and/or private locations; and

**WHEREAS** BROKER from time to time engages independent carriers to transport vehicles from its clientele in order to meet and fulfill its motor vehicle logistics obligations and does so under Department of Transportation Broker Operating Authority Number MC526599 issued in accordance with 49 C.F.R. §371; and

**WHEREAS** CARRIER expressly warrants and represents to BROKER that it is a contract carrier operating under the Department of Transportation operating authority and CARRIER expressly warrants and represents to BROKER that its Department of Transportation Operating Authority Number 725816 has never been suspended, revoked and/or expired; and

**WHEREAS** CARRIER expressly warrants and represents to BROKER that it has all of the required and appropriate Federal, State and/or Local authority to engage in the business of hauling and/or transporting vehicles by motor vehicle; and

**WHEREAS** CARRIER expressly warrants and represents to BROKER that it seeks the services of BROKER to arrange for the transportation and delivery of motor vehicles from new vehicle manufacturers, assembly plants, ports, rail distribution centers, auctions, marshaling yards, terminal distribution centers, common dealerships and other locations as may be offered from time to time by BROKER; and

**WHEREAS** CARRIER expressly warrants and represents to BROKER that it expressly understands that BROKER has the sole and exclusive discretion of whether to offer to CARRIER motor vehicle logistical services and nothing herein shall obligate BROKER to offer to CARRIER any quantitative logistical services; and

**WHEREAS THE PARTIES HERETO** expressly understand that motor vehicle logistical services shall mean loading, transportation, delivery and unloading of motor vehicles; and

**WHEREAS** CARRIER expressly warrants, represents, covenants, agrees and understands that all of the heretofore and hereafter warranties, representations, covenants, promises and agreements made by it have been relied upon by BROKER and have induced it and/or caused it to enter into this Agreement.

**NOW THEREFORE** for and in consideration of the mutual expressed and/or implied warranties, covenants and/or promises herein contained, the parties hereto expressly agree as follows:

1. **Term of Agreement:** This Agreement shall commence on the day and year first above written and shall continue thereafter for a period of three (3) years.

2. **Payment to Carrier:** The CARRIER shall be paid in accordance with the fee/rate schedule established by BROKER that is in effect on the date BROKER assigns to CARRIER a motor vehicle logistical services assignment. The CARRIER will only be paid for successful deliveries.

3. **Broker and Co-Broker Prohibition:** CARRIER expressly warrants, covenants, promises, agrees and represents that it will not directly and/or indirectly "broker," "co-broker" and/or cause to be brokered and/or co-brokered any and/or all motor vehicle logistical services arranged for CARRIER by BROKER herein and CARRIER expressly warrants, covenants, promises, agrees and/or represents and expressly states that it does not have broker authority and does not have a Department of Transportation Broker Operating Authority Number issued in accordance with 49 C.F.R. §371 and will not assign, pledge or otherwise transfer to any other corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship and/or individual any and/or all motor vehicle logistic services arranged for by BROKER hereunder.

4. **Independent Contractor:** CARRIER expressly warrants, represents, agrees and/or understands that the motor vehicle logistical services to be rendered by it shall be as an independent contractor with BROKER and by entering into this Agreement, will not be providing motor vehicle logistical services as an agent, servant, employee and/or representative of BROKER.

Fm:United Road Services, Inc. To:UNITED ROAD NEW REGISTRATION PKT (18885682538)   13:21 11/18/10GMT-05 Pg 03-08

5. **Mutual Services to be Rendered:** BROKER will arrange for the motor vehicle logistics and tendering of the motor vehicles from new motor vehicle manufacturers, assembly plants, ports, rail distribution centers, terminal distribution centers, auctions, marshaling yards, common dealerships and/or private locations to the CARRIER for motor vehicle logistical services. CARRIER will engage in motor vehicle logistical services to the destination and/or destinations designated by BROKER. In the event that CARRIER is unable to engage in the motor vehicle logistical services within the time period designated by BROKER, it shall notify BROKER within 24 hours of the motor vehicle logistical service assignment to CARRIER of its inability to meet the motor vehicle logistical services deadlines. In such case BROKER shall be entitled in its sole and absolute discretion to avail itself of the services of another carrier to comply with the request for motor vehicle logistical services within the time period designated by BROKER. In the event of Carriers' inability to engage in and/or complete the motor vehicle logistical services in the time period for same designated by BROKER, the CARRIER will not be entitled to any and/or all of the compensation for the motor vehicle logistical services assignment.

6. **Receipts and Bills of Lading:** CARRIER agrees to provide evidence of pickup in the form designated by BROKER, indicating the quantity of vehicles picked up at the origin and the description and condition of each vehicle in the shipment. CARRIER further agrees to provide evidence of delivery in the form designated by BROKER, indicating the quantity of vehicles delivered and the description and condition of each vehicle delivered, with such evidence accepted and acknowledged by the recipient of the shipment in writing. The difference in the condition of the vehicle shown on the origin receipt and the condition of the vehicles on the delivery receipt of the vehicle shall be conclusive evidence against the CARRIER of the damages caused by the CARRIER.

7. **Liability for Losses Other Than New Motor Vehicles:** CARRIER expressly warrants, covenants, promises, agrees and represents to BROKER that upon the tender of motor vehicles pursuant to this Agreement, it shall be solely and exclusively liable for all losses and/or damages while the said motor vehicles are in the possession, custody and/or control of CARRIER. Any and all losses and/or damages claims to and for motor vehicles are to be paid to BROKER whether directly by CARRIER or by an insurance company providing liability and/or property damage insurance coverage to CARRIER. Damage can include claims for diminished value and/or loss of sale. IF CARRIER or its insurance company fails and/or refuses to satisfy in full the losses or damages claims within 60 days of the event causing the losses or damages or within 45 days of notification of the losses or damages from BROKER to CARRIER, whichever time period is shorter, BROKER shall be entitled in its sole and absolute discretion to deduct the full dollar amount of the losses and/or damages and to assess and deduct a 15% surcharge from any motor vehicle logistical payments that may be due and owing to CARRIER. In the event that the deduction for the losses and/or damages, exclusive of the 15% surcharge hereinabove mentioned, from any motor vehicle logistical services payments that may be due and owing to CARRIER does not satisfy in full the amount of the losses and/or damages, BROKER shall be entitled to cancel the within Agreement and pursue those remedies available by law and CARRIER expressly warrants, covenants, promises, agrees and represents that it understands that the remedies available at law to BROKER shall also include lawful interest, counsel fees and costs of suit.

8. **Liability for Total Losses of New Motor Vehicles:** In the event of losses and/or damages to a new motor vehicle while under the care, custody and/or control of CARRIER pursuant to this Agreement and the new car manufacturer fails and/or refuses to issue a Certificate of Compliance in accordance with 49 U.S.C. §30112 and/or 49 U.S.C. §30115 of the National Traffic and Motor Vehicle Safety Act, CARRIER and/or its insurance companies will pay in full to BROKER the retail value of the lost and/or damaged new motor vehicles less salvage value, if any. Full payment of the retail value less salvage value, if any, shall be paid in full within 60 days of the event and/or occurrence directly and/or indirectly causing the loss and/or damage to the new motor vehicle or within 45 days of notification from BROKER of the new car manufacturer's failure and/or refusal to issue a Certificate of Compliance in accordance with 49 U.S.C. §30112 and/or 49 U.S.C. §30115, whichever time period is shorter. If the CARRIER and/or its insurance company fails and/or refuses to pay to BROKER the full retail value less salvage value, if any, within the time periods set forth hereinabove, BROKER shall be entitled in its sole and absolute discretion to deduct the full retail value less salvage, if any, and assess and deduct a 15% surcharge from any motor vehicle logistical services payments that may be due and owing to CARRIER. In the event that the deduction, exclusive of the 15% surcharge, taken from motor vehicle logistical payments that may be due and owing to CARRIER does not equate to the retail value of the new motor vehicle less salvage, if any, BROKER shall be entitled to cancel this Agreement and pursue those remedies available to it by law and CARRIER expressly warrants, covenants, promises, agrees and represents that it understands that the remedies available at law to BROKER shall also include lawful interest, counsel fees and costs of suit.

9. **Insurance:** The CARRIER, at Carrier's own cost and expense, shall obtain, provide and keep in full force and effect for the benefit of BROKER, during the term hereof, general public liability, commercial trucking, cargo, property and worker's compensation insurance insuring BROKER against any and all liability and/or claims of liability arising out of, occasioned by and/or resulting from any accident, incident and/or occurrence directly, indirectly and/or proximately resulting in injuries to any person and/or property damage for limits in accordance with Schedule A. The insurance policies, together with certificates of insurance naming BROKER as a certificate holder and additional insured, shall be delivered to BROKER, together with proof of payment of premium prior to the commencement of this Agreement. At least 30 days prior to the expiration or termination date of any policy, CARRIER shall deliver to BROKER a renewal or replacement policy, together with certificates of insurance naming BROKER as a certificate holder and additional insured, along with proof of the payment of the premium therefor. The insurance policies to be secured by CARRIER shall be issued by insurance companies approved by the BROKER.

10. **Waiver of Subrogation:** CARRIER expressly warrants, covenants, promises, agrees and represents that it waives all rights of recovery against BROKER and/or BROKER's agents, servants, employees and/or representatives for any and/or all losses, damages and/or injuries of any nature whatsoever to property or persons for which CARRIER is insured. CARRIER shall obtain from Carrier's insurance companies and will deliver to BROKER at least 15 days prior to the effective date of these Agreement waivers of any and/or all subrogation rights under the respective policies.

11. **Indemnification:** CARRIER expressly warrants, covenants, promises, agrees and represents that it will indemnify, save, hold harmless and defend BROKER without disclaimer and/or reservation from and for any and all payments, expenses, costs, attorneys' fees and from any and all claims and liability for losses and/or damages to property and/or injuries to persons occasioned wholly or in part by or resulting from any acts and/or omissions by CARRIER and/or Carrier's agents, servants, employees and/or representatives or for any cause or reason whatsoever arising out of, occasioned by or resulting from any motor vehicle logistical services provided and/or to be provided by CARRIER pursuant to this Agreement.

12. **Commercial Driver's Licenses:** CARRIER expressly warrants, covenants, promises, agrees and represents that any and all of its drivers have valid commercial driver's licenses and that no driver's commercial driver's license has ever been revoked and/or suspended by any Federal, State and/or Local administrative and/or judicial entity.

13. **Compliance with DOT Regulations:** CARRIER expressly warrants, covenants, promises, agrees and represents that each and every driver satisfies all of the provisions of 49 C.F.R. §391 and in particular 49 C.F.R. §391.44, Physical Qualifications for Drivers. Likewise, CARRIER expressly warrants, covenants, promises, agrees and represents that each and every driver is in compliance 49 C.F.R §382, and that none of the drivers who will be providing motor vehicle logistical services for CARRIER have ever tested positive for alcohol and/or controlled substances. Continuing, the CARRIER expressly warrants, covenants, promises, agrees and represents that it conducts random testing for alcohol and/or controlled substances of its drivers in accordance with 49 C.F.R. §382.305 and reasonable suspicion testing of its drivers in accordance with 49 C.F.R. §382.307. It is expressly understood and agreed upon that the failure of the CARRIER to comply with the provisions of this paragraph to this Agreement shall constitute a breach of the Agreement and BROKER in its sole and absolute discretion is free to immediately cancel this Agreement. CARRIER expressly warrants, covenants, promises, agrees and represents that its personnel, including but not limited to drivers, are fully familiar with and will utilize their best efforts to comply with the Federal Motor Carrier Safety Regulations and the United States Department of Transportation and Federal Highway Administration rules and regulations.

14. **Restrictive Covenant:** CARRIER expressly warrants, covenants, promises, agrees and represents that it is expressly prohibited for a period of 24 months after the expiration of this Agreement from directly and/or indirectly soliciting, contracting and/or causing to be solicited or contracted any and/or all motor vehicle logistical services from any new vehicle manufacturer, assembly plants, ports, rail distribution centers, auctions, marshaling yards, terminal distribution centers, common dealerships and/or any and/or all shippers contained in such facilities after being introduced to, put in touch with and/or made known to CARRIER by BROKER. Likewise, CARRIER expressly warrants, covenants, promises, agrees and represents that it is expressly prohibited for a period of 24 months after the expiration date of this Agreement from directly and/or indirectly soliciting, contracting and/or causing to be solicited or contracted any and/or all motor vehicle logistical services from any and/or all new motor vehicle manufacturers, assembly plants, ports, rail distribution centers, auctions, marshaling yards, terminal distribution centers, common dealerships and/or any and/or all shippers contained in such facilities being serviced by BROKER during the three year period of this Agreement.

In addition to any other rights and/or remedies available to BROKER for breach of this provision of this Agreement, BROKER shall be entitled to enforcement of this provision by way of injunctive relief by a Court of competent jurisdiction and CARRIER expressly warrants, covenants, promises, agrees and represents that it consents to such injunctive relief enjoining and restraining CARRIER from directly and/or indirectly providing any and/or all motor vehicle logistical services from any and/or all new vehicle manufacturers, assembly plants, ports, rail distribution centers, auctions, marshaling yards, terminal distribution centers, common dealerships and any and/or all shippers contained in such facilities which were introduced to, put in touch with and/or made known to CARRIER by BROKER as well as any and all such entities serviced through BROKER.

In addition to the injunctive relief set forth hereinabove, BROKER shall be entitled to liquidated damages in an amount equal to three times the amount of the gross revenue paid to CARRIER by the new vehicle manufacturers, assembly plants, ports, rail distribution centers, auctions, marshaling yards, terminal distribution centers, common dealerships and/or any and all shippers located in such facilities that were introduced to, put in touch with and/or made known to CARRIER by BROKER, together with such facilities and/or entities serviced by BROKER through the three year period of this Agreement. CARRIER expressly warrants, covenants, promises, agrees and represents that it will produce and/or make available all of those documents requested by BROKER, its agents, servants, employees, attorneys and/or accountants deemed necessary by BROKER to calculate the liquidated damages. Such documents shall include, but are not limited to, contracts, bills of lading, receipts, deposits, bank statements, checks and/or Carriers' financial records of any kind. Payment of the liquidated damages amount shall be made within 45 days of presentation to CARRIER by BROKER.

CARRIER expressly warrants, covenants, promises, agrees and/or represents that it will be responsible to pay all attorneys' fees, accountants' fees and costs incurred for seeking the consented to injunctive relief and/or liquidated damages set forth hereinabove. Payment of same shall be made within 45 days of presentation to CARRIER by BROKER.

15. **Non-Assign ability:** This Agreement shall be binding upon the heirs, successors and/or the assigns of the respective parties hereto. However, CARRIER expressly warrants, covenants, promises, agrees and represents that it shall not assign this Agreement or any rights hereunder it may have without the prior written consent of BROKER.

16. **Choice of Law, Jurisdiction and Venue:** This Agreement shall be construed and/or interpreted in accordance with and be governed by the laws of the State of Michigan and any Federal Regulations and/or Legislation that pre-empts and/or supplements the laws of the State of Michigan. CARRIER expressly warrants, covenants, promises, agrees and represents that it hereby consents to the jurisdiction of the Courts of the State of Michigan for any and/or all legal proceedings directly and/or indirectly arising out of, pertaining to and/or relating in any way to this Agreement. CARRIER expressly warrants, covenants, promises, agrees and represents that any and/or all legal proceedings directly and/or indirectly arising out of, pertaining to and/or relating to this Agreement shall be venued in the Circuit Court in the County of Wayne and State of Michigan.

Fm:United Road Services, Inc. To:UNITED ROAD NEW REGISTRATION PKT (18085692536)    13:21 11/19/10 GMT-05 Pg 05-09

17. **Non-Waiver by Broker:** The various rights, remedies, options and/or elections of BROKER expressed and/or implied herein are cumulative. The failure of BROKER to enforce strict performance by CARRIER of the conditions, covenants, warranties and/or promises of CARRIER expressly and/or impliedly set forth herein and/or the failure to exercise any and/or elections and/or options and/or to resort and/or have recourse to any and/or all remedies herein conferred and/or accepted by BROKER shall not be construed and/or deemed to be a waiver and/or relinquishment by BROKER of any CARRIER covenants, warranties, representations, agreements and/or promises and/or any and/or all BROKER options, elections and/or remedies, but the same shall continue in full force and effect.

18. **Cancellation of Agreement:** BROKER may at any time during the three year period of this Agreement cancel this Agreement without cause and in its sole and exclusive discretion upon 10 days' notice to CARRIER.

19. **Notices:** All notices required under the terms of this Agreement shall be given by mailing such notice by regular and certified mail, return receipt requested, to the address of the parties as shown at the head of this Agreement, or to such other address as may be designated in writing, which notice of change of address shall be given in the same manner.

20. **Entire Agreement:** This Agreement contains the entire contract between the parties. No representative, agent, servant and/or employee of BROKER and CARRIER has been authorized to make any representations and/or promises beyond those contained herein and/or to vary, alter and/or modify the terms and/or conditions herein contained.
No additions, changes and/or modifications, renewals and/or extensions to this Agreement shall be binding unless reduced to writing and signed by BROKER and CARRIER.

21. **Number and Gender:** In all references herein to any parties, persons, entities and/or corporations, the use of any particular gender and/or the plural or singular number is intended to include the appropriate gender and/or number as the text of the within instrument may require.

22. **Validity of Agreement:** The terms, conditions, covenants, promises and provisions of this Agreement shall be deemed to be severable. If any clause or provision herein contained shall be adjudged to be invalid or unenforceable by a Court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause, covenant, promise and/or provision herein, but such other clauses, covenants, promises and/or provisions shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have hereto caused these presents to be executed this _ZL_ day of _November_, 20_10_.

Broker:                                  Carrier:

United Road Logistics, LLC.              Premier Towing and Auto Transport
10701 Middlebelt Road                    821 Lane Allen Rd
Romulus, MI 48174                        Lexington, KY 40504

                                         By: /s/ A. Patel
By:_____

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Trinity Insurance Services, LLC |
|---|---|
| TRINITY INSURANCE SERVICES, LLC | PHONE: (888) 391-0416 / FAX: (888) 415-0671 |
| 623 WEST MAIN STREET | E-MAIL: certificates@trinityins.net |
| CLARKSON KY 42726 | |
| Phone: (888) 391-0416 Fax: (888) 415-0671 | INSURER(S) AFFORDING COVERAGE — NAIC # |
| | INSURER A : National Indemnity — 20087 |
| INSURED | INSURER B : |
| CHEHAR MAA TRANSPORT INC. | INSURER C : |
| DBA PREMIER TOWING AND AUTO TRANSPORT | INSURER D : |
| 790 WESTLAND DRIVE | INSURER E : |
| LEXINGTON KY 40504 | INSURER F : |

## COVERAGES  CERTIFICATE NUMBER: 43462  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS |
|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED. EXP (Any one person) $ |
| | | | | | | | PERSONAL & ADV INJURY $ |
| | | | | | | | GENERAL AGGREGATE $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG $ |
| | ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) $ 1,000,000 |
| | ☐ ANY AUTO | | | 70TRS028221 | 01/15/14 | 01/15/15 | BODILY INJURY (Per person) $ |
| | ☐ ALL OWNED AUTOS ☒ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) $ |
| | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE $ |
| | DED ☐ RETENTION $ | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-EA EMPLOYEE $ |
| | | | | | | | E.L. DISEASE-POLICY LIMIT $ |
| A | Physical Damage | | | 70TRS028221 | 01/15/14 | 01/15/15 | Stated Values $250,000 Ded. $1,000 |
| A | Motor Truck Cargo | | | 70TRS028221 | 02/10/14 | 01/15/15 | Ded. $1,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

CERTIFICATE HOLDER ADDED AS ADDITIONAL INSURED ONLY AS THEIR INTERESTS MAY APPEAR

Page 1/2

Handwritten: 378K  
estimated  
loss

Trailer Interchange Limit: $25,000 Ded. $1,000

MC722216

**CERTIFICATE HOLDER**

United Road Logistics LLC
10701 Middlebelt
Romulus MI 48174

734-347-7923

Attention:

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

Eric Huff

ACORD 25 (2010/05)

© 1988-2010 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

9/2014 16:19